23456.   GEORGIA POWER COMPANY *v.* WHITLOCK.

DECIDED MARCH 26, 1934.

*Pemberton Cooley, Erwin, Erwin & Nix, Colquitt, Parker, Troutman & Arkwright,* for plaintiff in error.

*John I. Kelley, G. Fred Kelley, Marvin A. Allison,* contra.

SUTTON, J.   O. R. Whitlock brought suit for damages against the Georgia Power Company and alleged that he built a gin-house, installed gins, and wired the gin-house for the reception of electric current to operate the gins; that the Georgia Power Company furnished the electric current, connecting its power line with the wiring done by plaintiff; that the agent of the defendant told plaintiff that the service-head which plaintiff had installed was not the proper kind to receive 2300 volt service, but the same was a 220 volt service-head; that plaintiff told the agent that he would get the man that had wired the gin-house for him, and that he wanted the wiring fixed sufficiently before the defendant turned the current into his building; that his agent of the defendant and the man that wired the building for the plaintiff did some work on the wiring at the service-head and turned the current on; that it worked all right for awhile; that later there was a thunderstorm and apparently lightning struck the wires of the defendant and caused an overcharge of electrical current to pass over the service-head and into the plaintiff's building, destroying the same by fire; and that the plaintiff charged that the defendant was negligent "In connecting its transmission lines of 2300 volts with plaintiff's building and machinery, knowing as it did that the size of the service-head, conduit, and wires was suitable for only 220 volts;  .   .   in splicing said conduit and wire on the outside of said building and failing to properly insulate same, said joint being only taped; in failing to use a conduit of sufficient size to safely carry the current over the wires therein without the danger of being heated to a blaze during an overload, as when struck by lightning or overloaded by reason of lightning, as was the case at the time; and in connecting with said

service-head with knowledge of the facts herein alleged; . . in failing to place a ground wire at said building to take care of overloads of electricity, and especially during electric storms, such as were common at that season of the year; . . in failing to install lightning arresters such as are usually and customarily used to take care of overloads of electricity in times of electric storms, on its transmission lines and poles; . . in installing three 60 ampere fuses on the pole next to plaintiff's gin for service of plaintiff's needs as customer of defendant, knowing said fuses were too strong or heavy and would not protect plaintiff's property from overloads of current from all causes." "Plaintiff alleges that the weather-head or service-head heretofore referred to was improperly installed, in that the same was placed upside down, so that the same would and did fill with water, thereby impairing the insulation of the wiring at said weather or service head so as to create an arc which on account of the electric current of defendant present therein would and did burn the wires into and set fire to the building of plaintiff. Plaintiff further alleges that whether the current of electricity which set said building afire was produced by lightning or whether the same was produced by the current of electricity generated and transmitted over its said line, the acts of negligence set out in this petition were the sole and proximate cause of said fire. Plaintiff alleges that defendant was negligent in the respects alleged in this petition for releasing said power or current in said building, for the reason that it was not safe for ordinary and usual current produced by the defendant, much less for overload thereof or lightning, and plaintiff says that the negligence of the defendant was the cause of the fire, whether it was produced by lightning or by the current generated, transmitted or distributed by defendant." The defendant denied that it was negligent, setting up in the answer that the wiring that plaintiff had done was defective, and that any damage caused plaintiff by said lightning was either caused by this improper wiring or by an act of Providence, and that the defendant had discharged its duty to the plaintiff when it used such equipment and safeguards as were best known and most extensively used by electrical companies at the time it connected with the plaintiff's gin and turned on the current.

The trial of the case resulted in a verdict for the plaintiff, and the defendant moved for a new trial, the motion was overruled, and to this judgment it excepts.

■ The court charged the jury, "I have not stated all in the defendant's answer, but you will also have it out with you, and, if you see fit, you may read it all to see more fully all of the defendant's answer." This was a small excerpt from the charge. What the court actually charged in this connection was "Plaintiff alleged in his petition that the defendant was negligent in not properly connecting the electricity, the power, from the Georgia Power Company on to the wiring of his gin-house. In other words, he charges that the conduit was too small and that the weather-head, or cap, or whatever it has been called by the various names in the evidence, was too small to confine the wires in. And he further charges that on account of the fact that it was not safely and properly connected with the wiring of the gin, that on April 3, 1931, it was destroyed by fire. And he further alleges the cause of the destruction of the gin was on account of the improper and negligent connecting and turning on of the electricity of the company on to the wiring into the gin, and that on that account they were responsible, not showing proper diligence, in not seeing that it was safely connected with the wiring of the gin. And he also further charges, in an amendment, that they were negligent in not using proper fuses. Now what I have stated to you is not all of the allegations in the petition, you will have it out with you and you can read it all if you see fit to see just what all of the allegations in the petition are. Now the defendant comes in, and they deny that they were negligent in any way. They do not deny but that the gin and gin outfit was destroyed by fire, but they deny they were negligent in any way in the connecting of the Georgia Power Company wires on to the wiring of the gin. And they say that if a fire occurred on account of improper wiring and connections, that it was the improper wiring and connection of the plaintiff himself in establishing his gin outfit, and not on account of any negligence of the defendant. Now I haven't stated all in the defendant's answer, but you will also have it out with you, and, if you see fit, you may read it all to see more fully all of the defendant's answer. Now what I have stated, both as to the plaintiff's petition and amendment and defendant's answer also, is not evidence, but just the basis of this suit that you all are to determine." Taken as a whole, this charge did not unfairly state the contentions of the defendant. The judge in making reference to the pleadings stated the contentions of the defendant in the

same manner as he did those of the plaintiff, and used almost the same language in so doing. The expression to the effect that the jury might read the answer if they saw fit did not have the effect of instructing the jury that they might ignore one or more of the contentions made by the defendant in its defense of this action. This charge was not subject to any of the criticisms made against it, and is not sufficient cause for the grant of a new trial.

■ The court charged the jury that "one matter that is germane to the issue that you are to try, one question that is germane in this case, is whether or not, when the Georgia Power Company connected their current, 2300 volts, as contended for here,—whether or not they used proper diligence and care in connecting and turning on the electricity on to the wiring and machinery of the gin of the plaintiff, or whether or not, with knowledge, whether or not they were negligent in seeing that it was safely turned on so far as the same pertains to them." The defendant contends that this charge was argumentative and misleading to the jury, in that it placed undue emphasis upon one particular feature of the case to the exclusion of other questions just as germane and important; that it was confusing to the jury in that it led them to believe that other issues involved in the case, that is that the plaintiff had himself, through his agent, made the improper wiring and connections, if improper wiring and connections were made, and that the property sued for had been destroyed by fire, resulting from a bolt of lightning, were not questions of equal importance to the one referred to by the court in said charge; and that said charge was erroneous for the reason that nowhere therein, or elsewhere in the charge as a whole, did the court define what was meant by "proper diligence and care," and that the court did not state the degree of diligence required of the defendant, and therefore said charge was confusing to the jury. Immediately after giving said excerpt in charge, the court charged the jury, "if you should believe, in this case, that the proximate cause of the burning of the gin and outfit was on account of the improper and negligent wiring on the part of the plaintiff, if that was the cause of the fire and destruction of the gin and gin outfit, the plaintiff could not recover." The court also thereafter charged the jury that if they believed that the fire was caused by an act of God, the plaintiff could not recover. In these circumstances, we do not think that the charge excepted to was sub-

ject to the criticisms made by the defendant. The charge was not like the charge excepted to in *Stiles* v. *Shedden*, 2 *Ga. App.* 317 (4), that "the main question for you in this case is this;" and in *Summers Buggy Co.* v. *Estes*, 34 *Ga. App.* 307, wherein, as to one of the issues in the case, the court charged the jury "That is the true issue in this case." In these cases the court picked out the specific contention charged about and stated to the jury that it was the main issue in the case, or that it was the real issue in the case. In the present case the court charged the jury that the contention referred to was "one matter that is germane" to the case. This recognizes that there were also other issues which were germane; and then the court immediately followed this charge with proper instructions on the other issues in the case.

Nor is said charge error because what is meant by "proper care and diligence" is not defined in said charge excepted to or in the charge as a whole. The terms "ordinary care" and "reasonable care" are interchangeable. *Jackson* v. *Goldin*, 26 *Ga. App.* 283 (106 S. E. 12). Proper care, reasonable care, and ordinary care and diligence are synonymous, and proper care is the equivalent of ordinary care. *A. & W. P. R. Co.* v. *Wyly*, 65 *Ga.* 121; Berlin *v.* Wall, 122 Va. 425 (95 S. E. 294, L. R. A. 1918D, 161) ; Ramsbottom *v.* A. C. L. R. Co., 138 N. C. 38 (50 S. E. 448). It is doubtful if any specific definition would enlighten the jury or make any plainer the plain meaning of these simple words.

■   The third and seventh grounds of the amendment to the motion for a new trial do not show error. The charge complained of in the third ground was correct in the whole and adapted to the issues in this case. The seventh ground contains an assignment upon the charge of the court as a whole as error.

■   The court charged the jury as follows: "But if, on the other hand, you should believe the gin was burned, but it was not on account of any negligence of the defendant, but on account of an act of Providence, over which they had no control, and if you should believe that to be the fact, from all the facts and circumstances in the case, the plaintiff would not be entitled to recover." This charge was not unsound as an abstract principle of law in that it was a statement to the effect that if the defendant was guilty of any negligence whatever the plaintiff could recover; nor was it misleading for the reason that it amounted to a statement that any act of neg-

ligence on the part of the defendant would make it liable to the plaintiff; nor was it subject to the criticism that it authorized the plaintiff to recover if the plaintiff was guilty of any negligence at all, whether such negligence was alleged in the petition or supported by any evidence. The charge complained of merely sought to state to the jury the true rule as to what constituted an act of Providence; that in order for a happening to be such an act, it must be untouched by human intervention in any form. "The most comprehensive definition of the term is any accident, due directly and exclusively to natural causes without human intervention, which by no amount of foresight, pains or care, reasonably to have been expected, could have been prevented. . . When the effect, the cause of which is to be considered, is found to be in part the result of the participation of men, whether it be from active intervention or neglect, or failure to act, the whole occurrence is thereby humanized, as it were, and removed from the operation of the rules applicable to acts of God." *Parrish* v. *Parrish*, 21 *Ga. App.* 275 (94 S. E. 315). The court immediately followed this instruction with an instruction that if the jury believed that the fire occurred by reason of improper connections with the wiring of plaintiff by the defendant, then the plaintiff could recover. The charge excepted to in this ground of the motion for a new trial was not erroneous upon any of the grounds assigned.

There is no merit in the fifth ground of the amendment to the motion for a new trial, that the court failed to charge the jury one of the main defenses of the defendant, that is, that the fire was due to the improper wiring of the gin by the plaintiff. The court charged the jury, "if you should believe, in this case, that the proximate cause of the burning of the gin and gin outfit was on account of the improper and negligent wiring of the plaintiff himself, if there was any improper and negligent wiring on the part of the plaintiff, if that was the cause of the fire and destruction of the gin and gin outfit, the plaintiff could not recover.". It will be seen that the court substantially covered this contention of the defendant, and that this ground is without merit.

The charge of the court fairly presented the issues made by the parties, and there is no merit in the contentions in the remaining grounds of the motion for a new trial, which are not full and complete, as required by law, that the court failed to charge the

jury that the defendant had discharged its duty, if it used such equipment and safeguards against danger as were best known and most extensively used at the time, that the charge did not set forth the rule of law as to the degree of care and diligence required of the defendant, and that the court failed to charge that the plaintiff could not recover if the fire was caused by an act of God. These matters were all substantially covered by the charge of the court, and if the defendant desired more specific instructions along these lines, it should have presented the court with timely written requests therefor.

The court did not err in failing to instruct the jury as to the burden of proof in the case. It is never error to fail to instruct the jury as to the burden of proof, in the absence of a timely written request therefor. *Carolina Life Ins. Co.* v. *Murphy,* 47 *Ga. App.* 425 (170 S. E. 817).

The evidence, while conflicting, authorized the jury to find that the defendant was negligent in splicing its wire to that of the plaintiff in making the connection with the wiring in the plaintiff's gin, in using the wrong kind of fuses in the weather-head, and in connecting with plaintiff's wiring in an improper manner and knowing that the weather-head of plaintiff on the outside of the gin was insufficient to hold the amount of current turned on, and in connecting plaintiff's wiring with the weather-head turned upside down so that water could get therein and cause the wires to short. While there was evidence to the contrary, and evidence to the effect that no safeguards can be put up which will under all conditions control lightning, the jury were the judges of the facts, and under the evidence of the plaintiff himself, which the jury could believe in preference to all the other testimony, the verdict was supported by evidence, and this court will not disturb the same.

It follows that the court did not err in overruling defendant's motion for new trial.

*Judgment affirmed.* *Jenkins, P. J., and Stephens, J., concur.*